You understand our lighting system. The panel has read all the briefs, so please get to the point as quickly as possible. We'd appreciate that. Having said all that, let's call the first case, which is number 17-20694, United States of America v. Bekir Buluc. Mr. Lake, are you ready? You have 15 minutes and you've saved some time for rebuttal. Thank you, Your Honor, and may it please the Court. The natural, sensible, and textual reading of the phrase takes any other action in this statute means only joint action, action like conniving or conspiring, the actions listed in the statute just before this phrase. It does not mean individual action, individual refusal to depart, and I'd like to begin with the text of the statute, which for reference is on pages 3 and 4 of my opening brief, and we're focusing in on two subsections, A1A and A1C. In short, my argument is that subsection A1A covers individual refusals to depart, whereas A1C, properly understood, covers joint actions, and this Court and other courts routinely employ canons of construction to understand the text that we're looking at. And here I pointed to two, a justum generis and nositura socius, which I think help. They teach what common sense knows, that words like people are known by the company they keep. And if I could give an example, if I began to speak of Nolan Ryan, Troy Aikman, and other greats, my listener would know instinctively that even though I said other greats, I did not mean to include Abraham Lincoln or Mother Teresa. Great as they may be in their own right, the context in which I used the phrase other dictates what I meant by it. And so here we use the same tools to look at the words that precede the phrase, the residual phrase takes any other action, to give it meaning. Here those words are connives or conspires, and it gives meaning to the phrase, meaning specifically joint actions, actions that require the involvement of another. This Court said something similar in McKay, quoting the Second Circuit and other courts, to say that when you have the words any or any other, I'm sorry, other or any other, following a list of specifics, it must mean other specifics similar to those first items. And so here the government says that these canons should not apply. It argues that there is no list and therefore we should not use these canons to interpret the text. I would disagree with that premise as I've noted in briefing, but I want to also disagree and say that we do have a list. What we have is what this Court has said numerous times in listing the elements of the crime, recently in Omron, Negay, and Nizamabarika. The Court writes that the elements include connives, comma, conspires, comma, or takes any other action. The rules of logic teach us that it means the same thing. It's disjunctive association. A or B or C means the same as A, B, or C. It means any one of the three would be sufficient. We do have a list here. And so in deciphering the residual phrase, we need to look at the specific examples that we have. I'm sorry. Did you mean to suggest that we have an opinion from this Court suggesting that the to read the statute as connives, comma, conspires, comma, or takes any other action, comma? The Court has never addressed the question I raised of what is the meaning of it, but in terms of listing how the elements go, it's connives, comma, conspires, comma, or takes any other action. Is there any case from any Court that interprets the statute to require a hustum generis or nociterosus to subsection C? No, Your Honor. I'm not aware of any, and the government has not briefed one, where this question has been raised. I'd point to the Supreme Court's decision in Webster, which I briefed, where in that case, the appellant had failed to serve a necessary party, and there the case was dismissed, failure to serve a necessary party. And so the appellant's argument was look at these other cases where necessary parties have not been served, and the case went forward. And the Supreme Court rejected that argument. If I could quote briefly from what the Court said, it said, and none of them was the point here at issue suggested or decided. The most that can be said is that the point was in the cases if anyone had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the Court, nor ruled upon, are not to be considered as having been decided so as to constitute precedent. That's our situation here. I submit that this question has lurked in the record for decades, but has not been raised. So the fact that no case has decided the issue doesn't weigh against Mr. Bullock here. As a matter of logic, an alien may connive to hamper his departure. Your view is that that requires joint action with another person because of the definition of connive. The definition in case law that premade the creation of the statute. So an alien may conspire with another person to hamper his own departure. I could see that. Would you agree as a matter of logic an alien may take any other action designed to hamper his own departure without agreeing or conspiring or conniving with someone else, just as a matter of logic? I do think that an alien can take action. I would submit that's what A1A is designed to cover, yes. But action designed to hamper his own departure. He could do something alone to do that, right? He could, yes. So I can imagine that Congress, in reading the statute, I can imagine Congress wanted to target that for some kind of penalty. Your view, however, is that take any other action designed to prevent or hamper requires joint action. So in your view, Congress wasn't targeting the action by the alien alone to hamper his own. Is that right? You've got to have joint action. In subsection C. In subsection C. Well, if the government finds that an alien does that alone, he's not conspiring, he does it alone, under what subsection is it supposed to prosecute him? I submit that that would be a prosecution under A1A, where the elements would require showing that the alien willfully refused to depart. So there's no willfully in 1C, right? There's no willfully there. That's correct. It's the only subsection that drops that off. So, I mean, is that important for your case or for the government's case, is there's no willfully there? I mean, the government, if it wanted to prosecute under A1A, it has to show willful refusal to depart. Under A1C, it would have to show take any other action designed to prevent. Is that different? Is designed different from willful? Quite honestly, in parsing it, I think they come close to the same thing. We're getting at the intention in the alien's mind, willful saying, the pattern instruction in the circuit. Is willful more than intent? Is it a term of art that connotes something more than just intent? Well, the pattern jury instruction would say that it's an intention to disobey the law. There's more to the instruction, but that's the general gist of it. And so my argument is, getting to your question, what was Congress's intent here, it strikes me as odd to say that Congress's intent is to criminalize any action taken to hamper a departure by placing that phrase at the end of a subsection that is third in a list of four. If Congress's real intent was to punish any action taken to hamper a departure, you would think you would lead with that and say, including but not limited to, here are some specific examples. It wouldn't be tucked away at the end of a third subsection. This could be a very simple statute if that was the intent. Well, the A1A is about failing or refusing to depart, full stop, within a certain period. Fail or refusing to depart. B is about failing to make some kind of application to travel. D is about another way of disobeying, refusing to present yourself. Then C is about this hampering or preventing.  A different sort of act as well. A different sort of act, yeah. I would submit that the point of C is similar to the point in another statute within the same Title VIII, and that's Section 1324. Section 1324 criminalizes transporting aliens and originally listed four ways of violating the statute. Congress later in the 1990s added a fifth subsection to punish anyone who conspires with or aids or abets someone in committing the first four. I would submit that we have a similar structure here. Now, this was written before that change was made to Section 1324, but my point is I think that's the purpose we're getting at, is that even if an alien just goes along with, connives in the common law, older definition being consent to someone else taking the wrongful action, that's the point that C is getting at. In fact, the caption of this statute is failure to depart, not taking any action to hamper the departure. If we look at the examples the Court went through of the four, these are examples that would fully prevent a departure if you fail to depart, if you fail to get the travel documents, if you fail to show up on the day of your departure. You do not depart. And I would submit that is the intent behind this statute. And your view is to take any other action that it's not a null set, right, because you're saying it could be aiding and abetting. That's correct. And I think this Court's case law supports the fact that you can aid and abet a crime without conspiring. Now, my colleagues may have other questions on this, but if they don't you may want to get to the Confrontation Clause. Can I ask just one more before we move to the Confrontation Clause? What if Subsection C said willfully takes any action or any other action designed to prevent or hamper? Would you concede that your client willfully took an action designed to prevent or hamper with the purpose of? And if I could just clarify the hypothetical, that's the sole text, willfully takes any other action. It looks just like A, B, and D. Yes. I think then it would be much more clear. And, in fact, that would be the natural reading if that was the intent, is takes any other action, including but not limited to conniving or conspiring. In fact, that's the normal logical construction for such a thing. So your point is that which is why I take your brief to effectively concede that your client was willful and, therefore, would have violated A if charged under A. I don't know that I necessarily want to concede exactly whether he would be convicted under a different subsection, but here I think it's a close call. Understood. Moving to the confrontation issue, it's an alternative issue because I believe I could win on the first issue alone, but the error here is that the district court allowed the government to admit inculpatory testimony by non-testifying declarants whom Mr. Bullock had no opportunity to cross-examine. Specifically at one of the airline representatives. I don't mean to cut you off, but I just want to make sure you get your argument out. Are we talking about an ROA 317 and ROA 341? I just want to zero in on the testimony that you say violates confrontation. That's correct. I would also point to the opening statements at 307. But I think in terms of the representative, the word the court just used, it is unclear exactly whose statements come in. Officer Rawls at 317 says it's the airline captain who presumably, as the flight is loaded and ready to go, is in the cockpit. And so at 317, Officer Rawls says that the ultimate decision is the captain's. It was determined by Turkish Airlines the way Mr. Bullock was acting, he did not want him on the aircraft. And so it's unclear, the government can't meet its burden of proving that that's non-testimonial when it can't even say when that statement was made. All right, so just getting to the actual exchange, Mr. Lear says, you're not Mr. Lear, Mr. Lear says, so he said no, and then the answer is they denied his boarding. That's correct. And the question, what happened after that? And the answer is as soon as he was told that he was not going, he stood up on his own accord and walked back to the vehicle. In your view, that's the problematic exchange. I think there is also additional problematic testimony right there where, again, this is at 317, Officer Rawls testifies that the ultimate decision for an alien to fly on a commercial aircraft is the captain, that he's the sole person that can make that decision. It's a statement of fact, right? It's unclear where that came from, Your Honor. There wasn't good foundation laid. But what is said— It's not a confirmation clause problem, though, right? I think it could be, Your Honor. I think what is being done is the prosecutor, through their witness, is referring to additional supporting evidence not in the record. Now, it specifically says that by the way Mr. Bullock was acting, the captain made this decision. That had to be relayed in some way. That's not just background information. It's based on this fact right in front, the captain makes a decision. Well, in your view, is the statement they denied his boarding, that's correct? Is that conveying a statement? I don't believe—I think that's closer to the verbal act, and that's what the district court contemplated in its limine order, saying that the fact that you were denied boarding can come in, but not any indication of what was said. That's at 295. I mean, surely that has to be right. I mean, if a law enforcement officer is testifying, we took him up to the gate, and then question, did they let him on the plane? And the answer is he was denied boarding. I mean, I don't even see that as a statement, that we don't get to first base on the confrontation clause. Do you agree with that? I think I would, Your Honor. If all we had is we were denied boarding, I would not be raising this argument. The problem we have is that in opening, mere minutes after the limine order from the court, the prosecutor began by saying Turkish Airlines doesn't want their customers to see this and then said you are going to hear that Turkish Airlines made the decision not to let the defendant on the flight. That's in the opening? That's in opening. That's not evidence though, right? It's correct, but it sets the tone for what the jury is about to hear. It tells them we are putting this in for the truth of the matter, and the way I know that is, one, the prosecutor says you are going to hear, here's the evidence, and then two sentences later says that's it. It's a very simple case. This is, Your Honors, was an 80-minute trial. The judge says that. I have the record cited 389. It's very short. The opening directly influenced the jury's view and carried on with them into deliberations. There's a mere 80-minute gap between the two. Why isn't it harmless? What difference does it make? The jury heard your client that he told the officers he was not going to get on that flight. He refused to get out of the car. He physically resisted the officers to board him. What difference does it make if the jury heard he was denied boarding? You can answer. I would say there's two reasons, Your Honor. One is similar to this court's case in Murrah. It's always improper for a prosecutor to suggest that there's outside evidence the prosecutor is aware of that would inculpate the defendant. But I think the more important is why this was hearsay and not direct testimony. That's at Record 197 where the prosecutor said they had an airline witness they planned to call. That's the representative. And the prosecutor called that person, quote, fairly hostile, like real hostile, and then said he is, quote, having lapses of memory. Had the government done this the correct way, brought the witness in, Mr. Bullock and I would have had a right to cross-examine that witness and to confront his hostility to the government and lapses of memory that very well could have meant he had a different view than the government did of what happened. Did you object at the trial? I can't remember. We did, Your Honor, at multiple occasions. And the court noted we'd have a running objection to it. About the witness? Yes, Your Honor. To the hearsay that was going to be coming in, yes, Your Honor. Okay. Thank you. That's all. Thank you. Thank you. You've saved time. Mr. Reed? Good morning. May it please the Court. John Reed on behalf of the United States. Your Honors, Mr. Bulloch's conviction should be affirmed because the statutory construction argument that he is trying to make is inapplicable to the statute at issue here, and the confrontation clause argument or alleged error is either nonexistent or harmless beyond a reasonable doubt. On the statutory interpretation argument, the phrase at issue here, connives or conspires, comma, or takes any other action, as the district court found, is a disjunctive phrase. You connive or conspire or take any other action. Judge Miller found that. It is a similar phraseology to what was in the Ali case, which said custom or excise officer or other law enforcement officer. So there is no list here. The defendant argues in his own brief. What you said about Ali, that's also disjunctive, right? Correct. Now, merely because it's disjunctive, does that sort of take a eustem generis and the other one off the table? Not necessarily, but I think it's strongly indicative of its inapplicability here. Because you can have a list that's or, or, or, or. Sure, sure. But if you have multiple or, or, ors, right, how many are we talking about, then you end up with a list. And I'm not suggesting that to cannot be a list. It could be. It can. Certainly. Certainly. But in the context of this statute, I think Congress was using connive or conspire sort of interchangeably. The definition cited in the defendant's brief says connive loosely means to conspire, right? So I think what one of the definitions, but I think what Congress was doing here is making sure in subsection C that it was criminalizing not just the completed action or successful actions, but a conspiracy, an agreement to try and prevent one's removal acting in concert with another. That's a familiar concept in criminal law. You can be guilty of a substantive act or you can be guilty of a conspiracy. You can be guilty of one but not the other. So that is very, very clear here. I don't think there's any ambiguity that subsection C is meant to be a broadly applicable prohibition against aliens who fail to cooperate with their valid removal orders. Well, what about the argument that that sort of ends up being redundant of A1A? Yes, Your Honor. An alien would willfully refuse to depart. Sure. And I think willfully is an important distinction there. But more importantly, A covers very different circumstances. A says you failed or refused to depart when you were given an opportunity to do so on your own. That's why there's a temporal component there. You have to fail or refuse within a 90-day period. Otherwise, why do we have this 90-day period? And it's consistent with immigration regulations that allow for self-removal. As this Court is aware from its experiences with petitions for review of BIA matters, not every alien who is subject to a final order of removal is forcibly taken into custody and removed. Many are allowed to self-remove. Look at page 419 of the record. That is a copy of Mr. Bullich's warrant of deportation. Page 419, there's a box that could have been checked. It says, if self-removal pursuant to a particular CFR, check here. And then the deportation officer would sign off once he's verified that, yes, the alien did depart. So it's very different circumstances. All right. So self-removal is A1A. You mentioned willfully is important. Why do you think willfully is important? Well, because you can have under A, you can have a good-faith effort. It's okay. You're subject. You've gone through the immigration process. You've got a decision from an IJ. Maybe you appealed. You got a decision from the BIA. Maybe you appealed even further and get a decision from this Court. At some point, that decision to leave becomes final. You can have a good-faith belief. Maybe I believe I can file another application for asylum, a successive application, within that 90 days, which is one of the things an alien can do. You can file based on changed country circumstances. Okay? So maybe I've got that good-faith belief, and so I have a defense. So that's why I think the willfulness is important. You have to know that I'm supposed to leave, and I'm just staying, and you all can find me and do something later. I'm just going to try and evade detection for as long as I can. So that's why that's important. It's just a very different set of circumstances. Doesn't subsection A also require a completed act? That is, you actually have to stay, right? Whereas the way I read C, you can hamper, right? So I would assume that the position of the United States would be that on the same facts, if you'd actually gotten the defendant on the plane and removed him, it would still be a violation of subsection C, charged or not charged. Absolutely. And that, I think, goes to the confrontation clause argument as well as to why it's harmless. You said earlier that you think that subsection C is clear. What do you make of the word designed? Do you have the statute in front of you, subsection C? I'm sorry, I do not. It's on page 3 or 4, very helpfully, of the Blue Brief, if that's helpful. But it says connives or conspires, comma, or takes any other action, comma, designed. Right. And so it's odd that designed appears at the back like that after the last comma because ordinarily we would distribute the designed to the other three. So it would read connives designed to prevent, conspires designed to prevent, or takes any other action designed to prevent. Obviously, the last clause of those three makes sense, but the first two don't. What do you make of that? I don't know, Your Honor. I have not considered that aspect of it. I read designed just merely to be a shorthand of intent. I take this action with a purpose, designed, meaning that's the effect I'm trying to bring about. I think you're understanding of the word designed. I'm curious how it interacts with the other verbs. Yeah. I don't know, Your Honor. It's implicit in connive and conspire that there be a design or an intent. Isn't that the definition of conspiracy? Conspiracy is an agreement to violate the laws and taking some step towards completion. You can't accidentally conspire. Correct. Can you accidentally connive? Connive is an unusual word, Your Honor. I've struggled with trying to understand what connive means in this statute. I don't know if you can actually connive. But I will say this, though, Your Honor's brought up the aiding and abetting. I think conniving or conspiring does exhaust the class of joint conduct that's possible under this statute because when you aid and abet, you attempt. I don't think Mr. Bullits could ever be charged with aiding and abetting the hampering of his own removal because when you aid and abet, you are essentially attempting to assist another in completing a crime with the intent that that crime come about. Correct? So this statute only applies to the alien subject to removal. So he can't aid and abet another. The sentence is any alien? Any alien who is subject to a final order of removal. Correct. And so aiding and abetting, while, yes, in theory you can aid or abet and not conspire, you can't in this under this statute. So that's my argument on that. I mean, the placement of the comma may be a mistake for all I know. I mean, takes any other action, design. Well, I'm not sure where you'd put a comma there. Well, I mean, it takes any other action seems to be the parenthetical phrase, right? Yeah. Connive or conspire or any other action. Oh, by the way, any other action designed. How do you connive to design? That's a good question, Judge Oldham. I do not know the answer to that. I did try and derive meaning from this, and it was very difficult to try and find anything in the legislative history that indicated clearly. Well, I mean, counsel opposite makes a rule of lenity argument. What are we going to do with that since, you know, you just said it's kind of hard to read? Well, it's hard to read what exactly connive means, but I don't think it's subject to a reading that is beneficial to him because the takes any other action is still meant to be broadly applicable. And, again, you don't – well, let me put it this way. There are no cases where an alien has physically resisted efforts to put him on an airplane and he was convicted under A. They're all convicted under C. I have not found any case where A would be applicable. So the problematic result would be if you construe the statute as Mr. Bullich suggests, I think his conduct may be immune under this statute, or at least arguably so, because I don't think A clearly covers it. You wouldn't naturally say of a person you've tried to place on a plane and he has physically resisted that that person failed to depart. You'd say he struggled, he fought, he took action to keep from getting on an airplane. Can I ask you a practical question? Yes, Judge. You wouldn't have this problem if you weren't dealing with private airfare, private airlines with their regulations and their passengers. Why not put these kind of people on a military transport? You're not going to have a problem there. That's true, Judge, and that is what happened to Mr. Bullich on prior occasions, but one of the officers testified that there is two responses. They would have had to force him onto even a military plane, which they would have been allowed to do. But this was the first attempt to remove him under this removal order, and the officer testified that they tried to give him at least one opportunity to go peacefully. But the other response is charter flights are not available. Five removals? I'm sorry? Wasn't this the fifth time they tried to remove this man? In total, but not under this removal order. He had been deported many times before. But he had a history. He did have a history, but the officer testified that charter flights were only available at certain times of the year, and so it costs money to keep him housed and detained while we're waiting for a charter flight. And so for cost efficiency purposes, the government tried to deport him on a commercial flight. And had he cooperated. Then you'd need to send two people round trip, right? Correct, and in this case it was actually three. But I suppose. Well, I don't know the cost-benefit analysis. I don't know how much it costs to keep him housed versus how much it costs for the plane tickets to Turkey, but obviously someone determined that it was worth it to do it that way. All right, go ahead. Well, that's the answer, though, Judge, is that they determined that we're going to give him an opportunity to go peacefully, and he chose not to do so. Turning quickly to the Confrontation Clause issue, I think Judge Clement hit it exactly on the head.  I stand on my brief for my arguments that there was not, but I believe that this Court can simply hold that even assuming there was error, it was harmless beyond a reasonable doubt in light of all of the evidence, overwhelming evidence, that Mr. Bullich took action designed to keep from getting on the plane, designed to keep the agents from removing him from the United States. Again, he, as Judge Clement noted, he has this history of forcing the government to place him on charter flights. The jury knew that. He was warned prior to the trip to the airport that he had to comply. He told the officers, I'm not getting on that airplane. He refused to get out of the vehicle.  He struggled with three men trying to carry him, flailing and kicking. They had to put him down. He made the statement that you can't use force to put me on a commercial flight. You can only use force to put me on a charter flight. So he knew exactly what he was doing, and he knew if he put up a fight, the officers would back down. That's exactly what happened. They put him down. Eventually he's taken to the detention center, and he's served with a notice of failure to comply. I think the evidence is inescapable that he took action designed to hamper his removal. And I believe I heard my colleague concede that the testimony that he was denied boarding, if that's all we had, would not be problematic. But I suggest that the testimony of Officer Nugent that we were denied boarding, even if the testimony of Officer Rawls is problematic, that testimony is cumulative of the statement that we were denied boarding. As Judge Duncan pointed out, I think the officers have to be allowed to explain what happened during the course of this encounter. So I do think the evidence is overwhelming that he took action designed to prevent his removal and keep from being. In your view, and maybe our precedents speak to this and you can tell me if they do, was the crime under 1A1C, was it necessary, I guess, to show that he was denied boarding in order to prove the crime? No. The denial of boarding certainly flowed from his criminal conduct, but his criminal conduct was the resistance with the intent to keep the officers from putting him on the plane. And that's what happened. Unless the Court has any further questions, we ask that the conviction be affirmed. Thank you. Thank you. Mr. Lake. Thank you, Your Honor. I'll be quick. Just as to Judge Clement's question about cost, these flights, the testimony was that there are charter flights three or four times a year, and as far as cost goes, federal government is now paying to house Mr. Bullock for the next four years, well, four years from the time of the sentencing. So in terms of cost, there was a much cheaper way to do it, but that does not resolve the questions before the Court. I just heard opposing counsel refer to takes any other action as a parenthetical phrase. I think that's the important point, that if this is a parenthetical phrase tucked into the third subsection, it surely cannot be meant to have this expansive meaning that any action a deportable alien takes to prevent or hamper is what's intended. You don't throw a parenthetical phrase into a third subsection if you mean something so expansive. You lead with that, and then you list some other specific examples. I think that it was Judge Oldham that asked a question about the completed act, and I think it's natural that we're talking about a completed act in subsection A because, frankly, if it's not completed, the alien would be deported. There would be no prosecution. It's not worth the government's time and money to prosecute someone for walking slowly, refusing to sign their name, things that may hamper in some respect but don't keep them from being deported. You just put them on the plane and deport them anyway. So I think just logically that's why we're talking about completed acts. There aren't going to be very many prosecutions for these small, minor hamperings. I think that I want to make one point about the Ali case. I think that the better comparison is Circuit City Stores and the Supreme Court just in terms of structure of the statute. Ali was dealing with a structure of noun or noun. Now, the first noun did have two qualifiers, customs or excise, but essentially you had noun or any other noun. So when opposing counsel makes much of disjunctive, that just means or. It doesn't tell you how many you're looking at, this or this, this or this or this. They're all disjunctive. In Circuit City Stores, there were three. It was seamen, railroad employees, or any other class of workers like what we have here, three disjunctive options. There in Circuit City Stores, the Supreme Court narrowed a broad phrase, any other class of workers, to mean only transportation workers, saying we must look to the common trait of the words that preceded. In terms of lenity, yes, I do make that argument. I think that the struggle we're having here to discern exactly what the meaning is means that if it is not so clear as I believe the statute is, it's still ambiguous, and the rule of lenity under Granderson in many of this court's cases say the court must rule in Mr. Bullock's favor. For confrontation clause, the government argues that the testimony was cumulative, and I disagree. I think importantly, I'm sorry, Officer Nugent's testimony was not cumulative in one aspect. Officer Rawls invoked the authority of the airline's captain who he said viewed what Mr. Bullock did and came to the conclusion that Mr. Bullock's actions were why he was not going to be deported. The prosecutor in opening did what is impermissible and referred to this out-of-court evidence, telling the jury we have other witnesses we're not bringing who viewed what Mr. Bullock did and reached the conclusion we're arguing for here. Officer Nugent saying we couldn't board is not cumulative of all that harm. The government bears the burden of proving harmlessness beyond a reasonable doubt, and they can't do it here because of that, and because the witness they should have called would have been hostile with lapses in memory. And upon confrontation, who knows what he would have said? The government cannot prove harmlessness. So here I believe that we should win on both issues. They stand independently, but I do disagree with the government when they say at the end that this is harmless beyond a reasonable doubt on confrontation. So if there's no further questions. Thank you very much. Thank you, Your Honors.